1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PHYLLIS CARR,

　　　　　Plaintiff,

　　v.

UNITED STATES OF AMERICA,

　　　　　Defendant.

Case No. 20-cv-00744-WHO

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING CASE FOR LACK OF SUBJECT MATTER JURISDICTION**

Re: Dkt. Nos. 48, 65, 75, 79, 81

Pro se plaintiff Phyllis Carr filed suit against defendant United States, arguing that she is entitled to a refund for taxes that she allegedly overpaid in 2012.  Both parties have filed motions seeking summary judgment in their favor.  On this record, I find that I lack subject matter jurisdiction over Carr's claim because she sought a tax abatement rather than a refund.  And if a refund claim had been involved, Carr failed to produce any evidence that showed the amount to which she was entitled or that rebutted the United States' evidence that she was not owed a refund because she did not overpay her taxes.  For those reasons, I GRANT the government's motion and DENY Carr's.  Judgment shall be entered accordingly.

## BACKGROUND

Carr's complaint seeks a refund for her purported overpayment of federal income taxes for the 2012 tax year.  *See* Second Am. Compl. ("SAC") [Dkt. No. 26] ¶¶ 11-30, 53.  She filed her tax return for 2012 via a Form 1040 in October 2013.  *Id*. at ¶¶ 11, 25.  Based on the information reported, the IRS assessed $46,314.01 against Carr.  U.S. Mot. for Summ. J. ("U.S. MSJ") [Dkt. No. 65] 7:6-7.  The IRS applied a $12,842.01 overpayment from 2010 to Carr's 2012 tax account, but Carr made no other payments toward her 2012 tax liability.  *Id*. at 7:7-9.

On or around February 20, 2015, Carr filed an amended tax return for 2012 via a Form 1040X. *Id*. at 7:13. After reviewing Carr's case, the IRS abated $28,724 in tax, $5,108.01 in failure to pay tax penalty, and $1,753.29 in interest. *Id*. at 7:19-21. In April 2016, the IRS sent Carr a letter stating that it had reviewed adjustments to her 2012 tax liability and would make reductions. *See* U.S. Oppo. to Mot. for Summ. J. ("U.S. Oppo.") [Dkt. No. 61] Ex. 10. The letter also stated in part:

> The Internal Revenue Code has no provision for filing income tax abatement claims. If you don't agree with our determination you can, after paying the additional tax due, file an amended return or a claim for refund. If you file a claim or amended return, you should do so within 3 years from the date your return was filed or 2 years from the time the tax was paid, whichever is later.

*Id*. The IRS then issued Carr a refund of $2,014.41.[1] *See* Carr Mot. for Summ. J. ("Carr MSJ") [Dkt. 42] 11:15; U.S. Oppo. at 7:21-24.

At some point, Carr objected to the amount of the refund and "sought relief through the Office of the Taxpayer Advocate Service." Carr Reply [Dkt. No. 67] 2:23. She relied on two representatives: Michael Ferguson, a certified public accountant, and Gregory Harper, Carr's husband who has "over 40 years of experience in [f]ederal and [s]tate taxation."[2] Carr Oppo. to U.S. MSJ ("Carr Oppo.") [Dkt. No. 77] 4 n.5; Carr Reply, Harper Decl. ¶¶ 2-3, 11. After a lengthy back-and-forth between Carr's representatives and the IRS, Carr received another letter from the IRS dated January 31, 2019, which read in part:

> We're pleased to tell you that we've accepted your claim for the tax year shown above. We'll change your account to show your claim and send a refund to you if you owe no other amounts the law requires us to collect. We'll include any interest we owe you.

*See* Carr Reply, Ex. J.

On January 31, 2020, Carr filed this suit, alleging in part that the IRS had refused to pay any refund in violation of Section 7422 of the Internal Revenue Code. *See* Dkt. No. 1. Carr

---

[1] According to the exhibit cited in the Nicozi declaration, an IRS account transcript for Carr's 2012 tax year, these adjustments were made in June 2016. *See* U.S. Oppo., Ex. 5.

[2] Ferguson died sometime in 2021. *See* Dkt. No. 49 at 2.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    argues that the January 31, 2019, letter shows that the IRS accepted her claim for a refund and that

2    she is owed $18,005. Carr Reply at 1:21-2:14; Carr MSJ at 7:8. The IRS contends that the letter

3    was sent in error, and that Carr submitted a request for an abatement, not a refund, because she

4    had an outstanding liability when she filed the Form 1040X. *See* U.S. MSJ at 7:13-16, 24:4. Carr

5    responds that her Form 1040X showed no taxes owed. Carr MSJ at 7:9.

6            Although Carr filed other claims related to the 2010 and 2011 tax years, I dismissed those,

7    as the 2010 claim required resolution via the 2012 claim, and Carr did not appear to dispute the

8    underlying liability for the 2011 tax year. *See* Dkt. No. 34. Only the 2012 claim is at issue now.

9    *See id*; Carr MSJ at 7:6-8.

10           Carr filed a motion for summary judgment on July 1, 2021. Dkt. No. 42. The United

11   States filed its own motion for summary judgment on September 15, 2021. Dkt. No. 65. I heard

12   arguments from both parties on November 10, 2021.[3]

13                              **LEGAL STANDARD**

14           **I.      SUBJECT MATTER JURISDICTION**

15           Subject matter jurisdiction concerns the court's statutory or constitutional authority to

16   adjudicate a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). "Federal courts

17   are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited

18   jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). The party

19   invoking the jurisdiction of the federal court bears the burden of establishing that the court has

20   jurisdiction to grant the requested relief. *See id*. Objections to subject matter jurisdiction may be

21   raised at any time. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).

22           **II.     SUMMARY JUDGMENT**

23           Summary judgment on a claim or defense is appropriate "if the movant shows that there is

24   no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

25

26   [3] Carr also filed three administrative motions before the November 10, 2021, hearing: a Motion to
     Strike a surreply from the United States and the testimony of a witness, a Motion for Relief to
27   change the scheduling order and for leave to respond to the surreply, and a Motion for Leave to
     file her own surreply. *See* Dkt. Nos. 75, 79, 81. Because I granted the United States leave to file
28   the surreply and because there was no good cause appearing to permit Carr to file any surreply,
     these motions are DENIED.

                                    3

United States District Court
Northern District of California

1    law." Fed. R. Civ. P. 56(a).  In order to prevail, a party moving for summary judgment must show

2    the absence of a genuine issue of material fact with respect to an essential element of the non-

3    moving party's claim, or to a defense on which the non-moving party will bear the burden of

4    persuasion at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has

5    made this showing, the burden then shifts to the party opposing summary judgment to identify

6    "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  The party opposing

7    summary judgment must then present affirmative evidence from which a jury could return a

8    verdict in that party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

9             On summary judgment, the court draws all reasonable factual inferences in favor of the

10   non-movant.  *Id.* at 255.  In deciding a motion for summary judgment, "[c]redibility

11   determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

12   facts are jury functions, not those of a judge."  *Id.*  However, conclusory and speculative testimony

13   does not raise genuine issues of fact and is insufficient to defeat summary judgment.  *See*

14   *Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir. 1979).

15                                                  **DISCUSSION**

16   **I.       SUBJECT MATTER JURISDICTION**

17            District courts have jurisdiction over tax refund suits, though the scope of that jurisdiction

18   is limited.  *See* 28 U.S.C. § 1346(a)(1); *United States v. Dalm*, 494 U.S. 596, 601 (1990) (noting

19   that Section 1346(a)(1) "must be read in conformity with other statutory provisions," including

20   Internal Revenue Code Sections 7422(a) and 6511(a)).  Under Section 7422(a), "[n]o suit or

21   proceeding shall be maintained in any court for the recovery of any internal revenue tax . . . until a

22   claim for refund or credit has been duly filed" with the IRS, according to applicable law and

23   regulations.  *See* I.R.C. § 7422(a).

24            For a claim to be "duly filed," it must comport with the timing requirements of Section

25   6511(a).  If a return is filed, the taxpayer must file any claim for credit or refund of an

26   overpayment within 3 years from the time the return was filed or 2 years from the time the tax was

27   paid, whichever expires later.  I.R.C. § 6511(a).  If the taxpayer did not file a return, any claim for

28   credit or refund must be filed within 2 years from the time the tax was paid.  *Id*.  Additionally, the

1    Supreme Court has held that Section 1346(a)(1) "requires full payment of the assessment before

2    an income tax refund suit can be maintained in a Federal District Court." *Flora v. United States*,

3    362 U.S. 145, 177 (1960).

4           If a refund claim is not duly filed, "a notice fairly advising the Commissioner of the nature

5    of the taxpayer's claim . . . will nevertheless be treated as a claim where formal defects and lack of

6    specificity have been remedied by amendment filed after the lapse of the statutory period." *United

7    States v. Kales*, 314 U.S. 186, 194 (1941).  "This is especially the case where such a claim has not

8    misled the Commissioner and he has accepted and treated it as such." *Id*.

9           There is a "fundamental difference" between a tax refund and an abatement, and between

10   claims seeking either.  *See Nasharr v. United States*, 105 Fed. Cl. 114, 120 (2012).  Under Internal

11   Revenue Code Section 6404(a), the IRS is "authorized to abate the unpaid portion of the

12   assessment of any tax or liability" that: "(1) is excessive in amount, or (2) is assessed after the

13   expiration of the period of limitation properly applicable thereto, or (3) is erroneously or illegally

14   assessed."  Though the case law is sparse, some courts have held that the permissive nature of

15   Section 6404 prevents taxpayers from seeking judicial review of abatements.  *See, e.g., Poretto v.

16   Usry*, 295 F.2d. 499, 501 (5th Cir. 1961) ("Section 6404 does not impose a duty . . . to abate

17   improper assessments, thereby providing a basis for a taxpayer's summary action challenging the .

18   . . refusal to abate an allegedly incorrect assessment."); *Etheridge v. United States*, 300 F.2d 906,

19   909 (D.C. Cir. 1962) (noting that the court was unaware of any statute allowing the government to

20   be sued for the abatement of an unpaid tax assessment); *Kang v. Shulman*, No. AW-09-1561, 2010

21   WL 11556596, at *2 (D. Md. May 20, 2010) (finding that "there is no cause of action for

22   abatement under any Internal Revenue Code provision" and that the IRS's discretion under

23   Section 6404 "is not subject to judicial review." ).  This reading aligns with the Supreme Court's

24   holding that the Tax Court "provides the exclusive forum for judicial review of a refusal to abate

25   interest" under another provision of Section 6404: Section 6404(e)(1).  *Hinck v. United States*, 550

26   U.S. 501, 503 (2007).

27          If a taxpayer filed a Form 1040, she must file any claim for a refund on a Form 1040X.

28   Treas. Reg. § 301.6402-3(a)(2).  Limited case law suggests that if a taxpayer seeking a refund files

5

1   a Form 1040X with an outstanding tax liability, it is instead a claim for abatement.  *Martti v.*

2   *United States*, 121 Fed. Cl. 87, 100 (2015) (holding that "because the tax had not been paid . . .

3   prior to the date plaintiff filed the Forms 1040X, there was no tax for plaintiff to claim he was

4   entitled to have refunded.").

5           **A.  Formal Claim**

6           The United States argues that Carr's 2012 Form 1040X was not a duly filed claim for a

7   refund, as she had an outstanding tax liability when it was filed.  *See* U.S. MSJ at 12:24, 13:15-

8   14:6.  Instead, it asserts that it was not until the IRS examined Carr's 2012 Form 1040X and made

9   the adjustments that she had no outstanding balance for her 2012 tax liability.  *See id.* at 14:7-10

10  (citing U.S. Oppo., Nicozi Decl. ¶ 31).  Therefore, the United States contends that Carr's Form

11  1040X was actually a claim for abatement that is not subject to my jurisdiction.  *Id*. at 14:4-6.

12          Although the United States argued this both in its opposition to Carr's motion for summary

13  judgment and in its own motion for summary judgment, Carr devotes little time to it.  She asserts

14  that after she filed her claim for a refund with the IRS, she could "bring an action against the

15  Government . . . in United States District Court."  Carr Oppo. at 9:21-23.  "Once the claim was

16  accepted and the case closed jurisdiction was proper."  *Id*. at 9:24-25.  Carr cites Section 7422(a)

17  and one case in support.  But that case is not helpful; it does not mention Form 1040X or claims

18  for abatement.  *See id.*  It involves the time limit for claims seeking refunds of taxes assessed

19  under the Export Clause of the Constitution.  *See United States v. Clintwood Elkhorn Mining Co.,*

20  553 U.S. 1 (2008).[4]  Additionally, Carr does not cite any authority challenging the United States'

21  characterization of her 2012 Form 1040X as a claim for an abatement rather than a refund.  *See*

22  *generally* Carr Oppo., Carr Reply.

23          Carr asserts that she had no outstanding tax liability at the time she filed her Form 1040X

24  because the  "2012 amended return showed no taxes owed" and that she "did not then and, does

25

26  _____

27  [4] Carr later asserts that it is "undisputed [that] refund claims are brought in US District Court" and that "[j]urisdiction clearly exists."  Carr Oppo. at 10:24-11: 3.  She cites *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970), which focuses on a party's burden on summary judgment and is not on

28  point.  The issue here is not whether a federal court has jurisdiction over a valid refund claim, but whether Carr has filed one or, instead, a claim for abatement.

*United States District Court*
*Northern District of California*

1    not currently owe any taxes" to the IRS.  *See* Carr Oppo. at 3:17-19.  This lacks evidentiary

2    support beyond Carr's declaration.  *See* Carr Oppo., Carr Decl. ¶ 16 ("I have not and do not

3    currently owe any Federal or State income taxes.").  Conversely, the United States has proffered

4    evidence that Carr had an outstanding tax liability when she filed the Form 1040X, including a

5    declaration from a tax specialist who examined Carr's case and an account transcript of Carr's

6    2012 tax year.  *See* U.S. Oppo., Nicozi Decl. at ¶¶ 26-32; Ex. 5.

7    　　　Based on the evidence showing that Carr had an outstanding tax liability at the time she

8    submitted her Form 1040X, I find that she did not duly file a claim for a refund.  The facts are

9    similar to those in *Martti*, where the court held that the plaintiff's Forms 1040X "could not have

10   been claims for refund on the date they were filed" because the plaintiff had an outstanding tax

11   liability at the time.  *See Martti*, 121 Fed. Cl. at 100.  I agree with the *Martti* court's logic that

12   "there was no tax for plaintiff to claim he was entitled to have refunded."

13   　　　This reading is supported by laws that govern refund claims.  Section 6511(a) refers to a

14   "claim for credit or refund of an *overpayment* of any tax."  I.R.C. § 6511(a) (emphasis added).

15   The language of the relevant Treasury Regulation is similar, discussing the need to file a Form

16   1040X "[i]n the case of an *overpayment* of income taxes."  *See* Treas. Reg. § 301.6402-3(a)(2)

17   (emphasis added).  If a taxpayer has not paid their tax liability, there is nothing for them to

18   recover.  Conversely, the language of Section 6404(a) makes clear that abatements involve the

19   "*unpaid portion* of the assessment of any tax or liability."  *See* I.R.C. § 6404(a) (emphasis added).

20   　　　Had Carr filed another Form 1040X after her 2012 tax liability was satisfied and before

21   filing this suit, it would have been a duly filed claim.  But as Carr conceded during oral argument,

22   she did not file a second Form 1040X.  Without additional facts or case law suggesting otherwise,

23   I find that because Carr had an outstanding tax liability when she filed her Form 1040X in

24   February 2015, it constituted a request for an abatement rather than a claim for a refund.

25   　　　**B.  Informal Claim**

26   　　　To the extent that Carr asserts that she made an informal claim for a tax refund, that

27   argument also fails.  *Kales* set forth two foundational questions in assessing informal refund

28   claims.  First, did the IRS have notice "fairly advising" it of the nature of the taxpayer's claim?

United States District Court
Northern District of California

1   *See Kales*, 314 U.S. at 194.  Second, were the informal claim's defects remedied by a later-filed

2   formal claim?  *See id*; *see also Kaffenberger v. United States*, 314 F.3d 944, 955 (8th Cir. 2003).[5]

3         The initial question is a close call.  Carr contends that she put the IRS on notice of her

4   claim by filing her amended return and challenging the subsequent audit.  *See* Carr MSJ at 13:19-

5   14:6.  Carr argues that a taxpayer "need only set forth facts" in a refund claim sufficient to allow

6   the IRS to "make intelligent review" of the claim.  *See id*. at 14:8-12.  In support, she cites

7   Treasury Regulation 301.6402-2(b)(1), which requires that a refund claim "set forth in detail each

8   ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner

9   of the exact basis thereof."  *See* Carr MSJ at 14:11-12.  Carr further cites the January 31, 2019,

10  letter as proof that the IRS accepted this claim for refund.  *See id*. at 9:15-16.

11        The United States challenges any argument of an informal claim, first by asserting that

12  Carr's Form 1040X and subsequent correspondence with the IRS "fail[ed] to adequately apprise

13  the IRS" of her request.  *See* U.S. MSJ at 14:26-28.  The United States proffers IRS records that

14  refer to Carr's case as an "abatement claim."  *See id*. at 15:8-10.  The case history report

15  repeatedly describes Carr's claim as a "claim for abatement," beginning in November 2015,

16  through May 2016, and finally in November 2018.  *See* U.S. Oppo., Ex. 7.  The examining

17  officer's activity record twice refers to an "abatement request" in November 2018.  *Id.*, Ex. 6.

18        However, the language of the January 31, 2019, letter indicates that the IRS treated Carr's

19  request as a refund claim.  *See* Carr Reply, Ex. J.  The letter informs Carr that the IRS has

20  "accepted your claim" for the 2012 tax year, and that it would "send a refund to you" if no other

21  amounts were owed.  *See id*.  Moreover, the letter is designated a "Letter 570" which, as Carr

22  notes, the IRS uses to close claims for refunds.  *See* Carr Oppo. at 6:3-10 (citing Internal Revenue

23  Manual 4.10.11.2.8).  The United States submits the testimony of a tax specialist who handled

24  Carr's case who, after reviewing IRS records, opined that the letter was "sent in error."  *See* U.S.

25

26

27  [5] The Ninth Circuit has cited *Kaffenberger* in asserting that informal refund claims must be
    followed by a formal claim.  *See, e.g.*, *Waltner v. United States*, No. 20-16475, 2021 WL

28  4310800, at *1 (9th Cir. Sept. 22, 2021).

United States District Court
Northern District of California

1    Oppo., Nicozi Decl. at ¶ 42.[6]  Although the letter characterizes Carr's claim as a tax refund, I find

2    the other IRS records more persuasive, as they span a greater amount of time and more often

3    describe Carr's case as a request for an abatement.  This suggests that the IRS did not have

4    adequate notice that Carr was seeking a refund.

5         Carr has not submitted any evidence beyond the letter suggesting that the IRS treated her

6    claim as a refund.  She repeatedly references her appeal through the Taxpayer Advocate Service.

7    *See, e.g.*, Carr MSJ at 14:1-5; Carr Oppo. at 10:1-6.  But details of that appeal, including whether

8    the parties involved described Carr's claim as one for a refund or an abatement, are lacking.

9    When I asked Carr during oral argument whether she had any documents or other evidence from

10   her appeal showing that it was the former, she noted that it was her representatives who spoke to

11   the Taxpayer Advocate Service, not herself.

12        While an unrepresented taxpayer may be understandably unclear about the difference

13   between a refund and abatement claim, in addition to having professional tax advisors Carr also

14   received notice from the IRS that she needed to file an amended return or claim for refund in the

15   April 2016 letter.  She did not do so timely.  Although she filed two Forms 843 (a claim for refund

16   and request for abatement)—one that was processed on September 15, 2020, and another on April

17   1, 2021—they do not establish subject matter jurisdiction because they were submitted after this

18   suit commenced.  *See* U.S. Oppo., Wolfe Decl., Exs. 1, 2.  Carr confirmed during oral argument

19   that she did not file any forms related to her 2012 claim beyond the Form 1040X and the two

20   Forms 843.  Without a later-filed formal claim, any argument that Carr made an informal claim

21   necessarily fails.

22        Carr is proceeding pro se.  Despite affording her the benefit of the doubt, I find that she has

23

24   ---
     [6] Carr takes issue with the testimony of the tax specialist, Lulu Nicozi, arguing in part that Nicozi
     testified as an expert, exceeded the scope of her disclosure, "had very limited information," and
25   was "not qualified to testify about IRS letters" or the signatory's "state of mind."  *See* Carr Reply
     at 8.  However, when disclosing Nicozi as a non-reporting expert witness, the United States stated
26   that she "may be called on to testify about IRS account transcripts and records" based on her
     "knowledge of transaction codes and entries."  *See id.*, Ex. A.  It also disclosed that Nicozi "may
27   also be called to provide factual testimony" based on her assignment to Carr's case.  *See id*.
     Moreover, Nicozi testified that her declaration was based on her personal knowledge and review
28   of Carr's case.  U.S. Oppo., Nicozi Decl. at ¶ 3.  Given Nicozi's experience and review of the IRS
     records, I find that Nicozi's testimony was appropriate.

United States District Court
Northern District of California

1    not shown that she filed a tax refund claim, either formally or informally, that falls within my

2    jurisdiction.  That ends the case and I must dismiss it with prejudice.  But to ensure that this result

3    does not exalt form over substance, I will also consider the merits arguments below as if she had

4    filed a refund claim.

5    **II.    REFUND CLAIM**

6         In a refund suit, "the taxpayer bears the burden of proving the amount he is entitled to

7    recover." *United States v. Janis*, 428 U.S. 433, 440 (1976).  "It is not enough for him to

8    demonstrate that the assessment of the tax for which refund is sought was erroneous in some

9    respects." *Id.*; *see also Wash. Mut., Inc. v. United States*, 856 F.3d 711, 721 (9th Cir. 2017) ("[I]f

10   insufficient evidence is adduced upon which to determine the amount of the refund due, the

11   Commissioner's determination of the amount of tax liability is regarded as correct.") (citation

12   omitted).  The Ninth Circuit has made clear that the taxpayer also "bears the burden of showing

13   that he or she meets every condition of a tax exemption or deduction."  *Davis v. C.I.R.*, 394 F.3d

14   1294, 1298 n.2 (9th Cir. 2005); *see also Rockwell v. C.I.R.*, 512 F.2d 882, 886 (9th Cir. 1975)

15   ("[T]here is no dispute that the taxpayer bears the burden of proof in substantiating claimed

16   deductions.").

17        Courts within the Ninth Circuit have also recognized that tax refund suits are de novo

18   proceedings. *See, e.g., Interior Glass Sys., Inc. v. United States*, No. 5:13-CV-05563-EJD, 2017

19   WL 1153012, at *4 (N.D. Cal. March 28, 2017) ("The court conducts a de novo review in tax

20   refund suits.") (citation omitted); *Hettinga v. United States*, No. CV-18-150, 2019 WL 2619640, at

21   *2 (C.D. Cal. May 20, 2019) ("[t]ax-refund suits are *de novo* proceedings"); *Access Behavioral*

22   *Health Servs., Inc. v United States*, No. 1:16-VC-00107, 2017 WL 4341841, at *3 (D. Idaho Sept.

23   29, 2017) ("In such cases, courts conduct a *de novo* review of the correctness of the assessment.").

24        **A.  The Refund Amount**

25        As the United States argues, Carr has not met her burden in showing that she was entitled

26   to a refund.  *See* U.S. Oppo. at 14:14-18.  Carr references, but did not submit, any evidence

27   supporting the merits of her refund claim, including any substantiation of the deductions or items

28   claimed on her 2012 Form 1040X.  Rather, she relies on the filing of the 2012 Form 1040X and

United States District Court
Northern District of California

1    the January 31, 2019, letter as evidence that she is entitled to a refund (and summary judgment in

2    her favor).  *See id*. at 15:1-3.

3           The United States further contends that Carr did not provide any substantiating evidence:

4    She produced no documents related to her claim during the course of this litigation and stated

5    during her deposition that she had no responsive documents in her possession, custody, or control.

6    *Id*. at 16:5-11 (citing Ex. 1, Carr Depo. at 114:18-22).

7           Carr repeatedly asserts that the January 31, 2019, letter is "dispositive" of her claim.  *See,*

8    *e.g.*, Carr Oppo. at 9:16; Carr Reply at 3:2-14 ("There is nothing else for the [p]laintiff to prove as

9    the [p]laintiff's claim was accepted by IRS.").  But the letter, viewed in the most generous way to

10   Carr, does not state the amount of refund to which she may be entitled.  *See id.*, Ex. J.  When

11   asked at the hearing on this motion to point to such evidence in the record, Carr referenced a Case

12   Management Statement as proof that she was owed $18,005.  *See* Dkt. No. 46 at 8.  This statement

13   does not constitute *evidence* showing that Carr is entitled to this or any specific amount.

14          The January 31, 2019, letter does not substantiate any deductions or items that Carr

15   claimed on her Form 1040X.  *See* Carr Oppo., Ex. J.  Carr argues that she provided this

16   substantiation during her administrative appeal but does not submit any such exhibits here.  *See*

17   Carr Oppo., Carr Decl. at ¶ 4 ("I presented through my representative at the time Michael

18   Ferguson, C.P.A. documentation substantiating every entry in my 1040x."); Carr Reply at 4:15-18

19   (similar).  Harper, Carr's husband, contends the same in his declaration.[7]  *See* Carr Reply, Harper

20   Decl. ¶ 17 (stating that he gave Ferguson "substantiating documentation").  But none of her

21   exhibits in this case evidences that substantiation.

22          Carr did file some exhibits in connection with the motions at hand: the January 31, 2019,

23   letter; Harper's declaration; the United States' disclosure of Nicozi; a memorandum to Nicozi

24   from the IRS's Office of Chief Counsel; a copy of the Taxpayer Bill of Rights; IRS Publication

25   556; and excerpts of Nicozi's deposition transcript.  *See* Carr Reply, Exs. A-J.  She also filed her

26

27   ───────────────

[7] The United States challenged Harper's declaration, saying he improperly testified as an expert
28   witness.  *See* U.S. Surreply [Dkt. No. 74] 3:8-18.  I need not determine this, as I only cite a portion
     of Harper's declaration that reflects his personal knowledge of what he provided Ferguson.

11

United States District Court
Northern District of California

United States District Court
Northern District of California

1    own declaration.  *See* Carr Oppo.  None of this substantiates any deductions or items that Carr

2    claimed on her Form 1040X, nor does it indicate the amount of refund that Carr alleges she is

3    entitled to.  Simply stating that she is entitled to a refund, or stating that she previously provided

4    such documentation outside of this de novo proceeding, is not sufficient.

5         Again, I am mindful that Carr representing herself in this matter.  However, it is her burden

6    in a tax refund suit to show the amount that she is entitled to, as well as to substantiate any

7    claimed expenses or deductions.  She has failed to produce any evidence doing this, despite having

8    ample opportunity when filing and responding to these motions, and when answering my

9    questions at oral argument.  While she did not have a lawyer, she did have the assistance of her

10   husband, who allegedly had extensive tax knowledge and experience.  Even if Carr were not

11   initially aware of her burden in a tax refund suit, she had ample notice of what was required and

12   did not meet that burden.

13        Accordingly, the United States would be entitled to judgment as a matter of law even if

14   this was a refund claim.

15        **B.  The Refund Itself**

16        The United States also argues that Carr is not entitled to a refund of *any* amount because

17   she did not overpay her taxes in 2012.[8]  *See* U.S. MSJ at 21:1-8.  It cites the declaration from

18   Nicozi, who reviewed Carr's "financial position" related to her 2012 Form 1040X and determined

19   that: (1) Carr underreported her income and (2) the IRS failed to account for an early retirement

20   distribution penalty.  *See id*. at 21:9-25 (citing U.S. Oppo., Nicozi Decl. at ¶¶ 43-51.  After taking

21   both into account, Nicozi testified that Carr would have owed an additional $7,533 in tax in 2012.

22   U.S. Oppo., Nicozi Decl. at ¶ 51.

23        Carr offers no evidence specifically countering this argument.  Rather, she attacks Nicozi's

24   testimony as improper and asserts that had she underreported her income, she "would undoubtedly

25   have received some type of communication from the IRS."  *See* Carr Reply at 11:24-12:11; Carr

26   Oppo. at 13:25-14:2.  This does not overcome the evidence produced by the United States—not

27

28   [8] Counsel confirmed during oral argument that the United States did not intend to take any
     enforcement action related to this argument, and instead raised it for demonstrative purposes.

United States District Court<br/>Northern District of California

1   only Nicozi's declaration, but the documents that she reviewed, including Carr's Form 1040X, a

2   wage and income transcript, and a bank deposits analysis.  *See* U.S. Oppo., Exs. 3, 8, 9, 11.  If I

3   had jurisdiction over this claim, the United States would be entitled to judgment as a matter of law

4   on this basis as well.

5   As indicated, Carr's insufficient evidence is a recurring defect for her claim.  She offered

6   little—if any—evidence showing that subject matter jurisdiction exists or that she was entitled to a

7   refund, let alone the amount she was purportedly owed.  It is unclear whether any such evidence

8   exists.  She stated—both during a previous discovery dispute and again during oral argument—

9   that she was not sure if Ferguson (her C.P.A.) preserved any documents related to her case.  *See*

10   Dkt. No. 49.  Instead, she relied heavily on the January 31, 2019, letter in responding to the United

11   States' arguments and in asserting that she is entitled to summary judgment.  I agree that this letter

12   raises legitimate questions about whether it was sent in error and, if so, why.  But without

13   additional *evidence* supporting her arguments, the letter does not by itself create a material factual

14   dispute.  Carr has not met her burden regarding either the procedure or the merits of this case.

**CONCLUSION**

15

16   For the reasons stated above, I grant the motion for summary judgment of the United

17   States and dismiss the case for lack of subject matter jurisdiction.  Judgement will be entered

18   accordingly.

19   **IT IS SO ORDERED.**

20   Dated: November 22, 2021

21

22



23   William H. Orrick
     United States District Judge

24

25

26

27

28

13